## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:24-cr-69** |
| **v.** | **JUDGE SARGUS** |
| **NICHOLAS PRICE** | **Sentencing Memorandum of the United States** |

The United States hereby submits its Sentencing Memorandum with respect to Defendant Nicholas Price. Mr. Price has three unresolved objections, one of which the United States supports and two of which the United States opposes. For the reasons that follow, a sentence of 46 months of imprisonment, 3 years of supervised release, and a restitution order in the amount of $1,408,113.51 would be sufficient but not greater than necessary to achieve the statutory goals of sentencing. Forfeiture is also required.

### BACKGROUND

On March 6, 2024, Mr. Price was arrested after having been charged by Criminal Complaint with Concealment Money Laundering and Wire Fraud. (Complaint, R.1.) The Complaint detailed a criminal scheme wherein Mr. Price defrauded three businesses and laundered the proceeds of his fraud. (*Id.*)

Two days after Mr. Price's arrest, Magistrate Judge King held a detention hearing, after which she ordered Mr. Price's release subject to certain conditions. (Release Order, R.8.) She ordered him to "not violate any federal, state, or local law while on release," to "not use alcohol at all," and to "not use or unlawfully possess a narcotic drug or other controlled substance." (*Id.* at 18–19.) She also ordered Mr. Price to complete an inpatient substance-abuse treatment

program and stayed his release pending the availability of a bed in the treatment program. (*Id.* at 20, 23.) While he awaited treatment, Mr. Price was detained in a local jail.

On May 2, 2024, a grand jury in this District returned an Indictment charging Mr. Price with 5 counts of Wire Fraud, in violation of 18 U.S.C. § 1343; 15 counts of Concealment Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and 15 counts of Monetary Transaction Money Laundering, in violation of 18 U.S.C. § 1957. (Indictment, R.17.)

After the Indictment was returned, the Pretrial Services Office filed two Bond Violation Reports. In a June 14, 2024 report, the Pretrial Services Officer informed the Court that Mr. Price had tested positive for methamphetamine and cocaine. In a July 18, 2024 report, the Officer reported that police had twice caught Mr. Price driving recklessly in luxury cars, including one instance that sent himself and another person to the hospital.

In response to the alleged violations, Magistrate Judge Jolson held a Show Cause Hearing on July 31, 2024. (Notice of Hearing, R.29.) She revoked Mr. Price's release and entered an order of detention. (*Id.*) Mr. Price filed a motion with the Court to revoke the detention order. (Motion, R.37.) Following a hearing, the Court denied the motion. (Order, R.42.)

On October 9, 2024, the Parties filed a Plea Agreement, in which Mr. Price agreed to plead guilty to one count of Wire Fraud and one count of Monetary Transaction Money Laundering. (Plea Agreement, R.45 at 179.) The Plea Agreement was filed pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and the Parties agreed that the appropriate sentencing disposition in this case was a term of incarceration of not less than 12 months and 1 day, and not more than the bottom of the guidelines range, as determined by the Court. (*Id.* at 181.) The Parties also stipulated to the application of multiple guidelines provisions, including the guideline regarding acceptance of responsibility. (*Id.* at 181–82.)

2

Additionally, Mr. Price agreed to pay restitution in the amount of $1,408,113.51 to the victims of his crimes, and to forfeit the same amount. (*Id.* at 182–184.) The Plea Agreement contained a lengthy Statement of Facts. (*Id.* at 186–88.)

On October 17, 2024, Mr. Price pleaded guilty. The Probation Officer released the Final Presentence Investigation Report on January 8, 2025. (PSR, R.50.) Sentencing is scheduled for February 6, 2025.

## ARGUMENT

The Probation Officer calculated that Mr. Price's Total Offense Level is 24 and that his Criminal History Category is III. PSR ¶¶ 46, 63. The Probation Officer correctly noted that these calculations would result in advisory guidelines ranges of 63 to 78 months of imprisonment, a fine of $20,000 to $2,816,227.02, and supervised release of 1 to 3 years. PSR ¶¶ 107, 111, 117.

The United States will first address Mr. Price's objections, and then will turn to the sentencing factors outlined in 18 U.S.C. § 3553(a).

**I.    Two of Mr. Price's objections should be overruled, and one should be sustained.**

Mr. Price has raised three objections to the PSR. First, he objects to the PSR's application of a two-level upward adjustment under U.S.S.G. § 3C1.1 for obstruction of justice. Second, he objects to the PSR's denial of any reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Third, he objects to the assessment of one criminal history point for his 2021 conviction for Reckless Operation. The first and third objections should be overruled, and the second objection should be sustained.

**A.    The Probation Officer correctly applied a two-level upward adjustment for obstruction of justice.**

The PSR applied the two-level obstruction upward adjustment because Mr. Price "attempted to obstruct justice." PSR ¶ 42. Specifically, Mr. Price called his mother and instructed

3

her to call another person (Person A) and have him delete Mr. Price's iCloud account. *Id.* He then called Person A to confirm that the account had been deleted. *Id.*

The U.S. Sentencing Guidelines provide that a two-level upward adjustment should be applied when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and the obstruction or attempted obstruction related to the offense of conviction. U.S.S.G. § 3C1.1.

Mr. Price argues that the adjustment should not apply because the iCloud account was not, in fact, deleted. (Defendant Objection Letter, R.50-1 at 262.) True, but irrelevant. The text of the guideline explicitly provides that the adjustment applies when the defendant "*attempted* to obstruct or impede" justice. U.S.S.G. § 3C1.1 (emphasis added). The commentary goes on to specify that the adjustment applies to "directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so." U.S.S.G. § 3C1.1 app. n. 4(D). Because Mr. Price attempted to have another person delete his iCloud account, the obstruction adjustment should apply.

Mr. Price also argues that he wanted his iCloud account to be deleted because it contained a "sensitive" video, not to obstruct the investigation. (Defendant Objection Letter, R.50-1 at 262.) This explanation is not consistent with the evidence. Mr. Price tried to be secretive in both calls. He did not tell his mother or Person A that he wanted the items deleted because of their "sensitive" nature. Instead, he talked around the subject and used code, hoping that any member of law enforcement who might be listening would not be able to figure out what he was doing. *See* PSR ¶ 42. For these reasons, the upward adjustment was properly applied.

**B.     The United States agrees with Mr. Price that he should receive a three-level reduction for acceptance of responsibility.**

The PSR denies any reduction for acceptance of responsibility on the ground that

application of the obstruction adjustment ordinarily indicates that a defendant has not accepted

responsibility. *See* PSR ¶ 45. The commentary to the acceptance-of-responsibility guideline

provides that "[c]onduct resulting in an enhancement under § 3C1.1 . . . ordinarily indicates that

the defendant has not accepted responsibility for his criminal conduct," but also recognizes that

there may be "extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may

apply." U.S.S.G. § 3E1.1 app. n. 4.

Based on the specific circumstances of this case, the United States agrees that Mr. Price

should receive a three-level reduction for acceptance of responsibility. *See United States v.

Gregory*, 315 F.3d 637, 640 (6th Cir. 2003). The Sixth Circuit has held that a defendant who

obstructed justice can still receive an acceptance reduction in certain circumstances if all his

"obstructive conduct predated the . . . guilty plea." *Id.* That describes this case. As the Parties

agreed in the Plea Agreement, Mr. Price should receive a three-level reduction for acceptance of

responsibility.

**C.     The Probation Officer correctly assessed one criminal history point for Mr. Price's 2021 conviction for Reckless Operation.**

Mr. Price challenges the application of one of his criminal history points. As an initial

matter, the resolution of this objection does not affect his Criminal History Category. Mr. Price's

total criminal history score is five. PSR ¶ 63. He challenges the assessment of only one of his

criminal history points. Defendants with four, five, or six criminal history points fall within

Criminal History Category III, so even if he were to prevail on this objection, his Criminal

History Category would remain unchanged.

5

On the merits, too, the objection falls short. The sentencing guidelines provide that one criminal history point should be added for "each prior sentence not counted" in other subsections of the guideline. U.S.S.G. § 4A1.1(c). In turn, § 4A1.2 provides instructions for when a "prior sentence" should be counted. The commentary to that guideline provides that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified." U.S.S.G. § 4A1.2 app. n.5.

The PSR applies one criminal history point for Mr. Price's 2021 conviction for Reckless Operation. PSR ¶ 59. Mr. Price was originally charged with Operating a Vehicle Impaired—Refusal, but ultimately pleaded guilty to an amended charge of Reckless Operation. *Id.* Under the commentary to § 4A1.2, Mr. Price was properly assessed one criminal history point for this conviction because it was a conviction for driving while intoxicated or under the influence. U.S.S.G. § 4A1.2 app. n.5. The objection should be overruled.

*            *            *

If the Court were to overrule Mr. Price's first and third objections and sustain his second objection, his offense level would decrease by three levels. That would result in a Total Offense Level of 21, and an advisory guidelines range of 46 to 57 months in prison.

## II.    The United States recommends a term of imprisonment of 46 months.

Considering the factors in 18 U.S.C. § 3553(a), the United States recommends a sentence of 46 months in prison. (The Parties agreed that the appropriate sentencing disposition in this case was a term of incarceration of not less than 12 months and 1 day, and not more than the bottom of the guidelines range, as determined by the Court. (Plea Agreement, R.45 at 181.) If the Court calculates the guidelines range to be different than 46 to 57 months in prison, the United

6

States will amend its sentencing recommendation accordingly.) The United States also recommends a three-year term of supervised release and a restitution order of $1,408,113.51.

*Nature and circumstances of the offenses.* Mr. Price committed serious crimes that have resulted in more than $1.4 million in losses to businesses. He owned Right PriceIT LLC, an information-technology business in Ohio. PSR ¶ 18. On three separate occasions, he defrauded other businesses that had agreements with Right PriceIT.

First, in 2019, a business called SSIT won two separate contracts to provide electronic equipment to the Ohio Department of Transportation and the Ohio Department of Natural Resources. PSR ¶ 19. Mr. Price entered into an agreement with SSIT under which Right PriceIT would provide the required equipment to the state agencies. *Id.* Mr. Price then entered into another agreement under which EC America Inc. would provide Right PriceIT with the electronic equipment that Mr. Price would resell to SSIT. *Id.* The state agencies, SSIT, and EC America all held up their ends of the bargain. PSR ¶¶ 17–22. Mr. Price did not. PSR ¶¶ 20–21. He received funds to cover both the cost of the electronic equipment and his profit. He was obligated to pay EC America $688,862.16. PSR ¶ 22. Instead, he moved $696,000 out of his business bank account and never paid EC America. *Id.*

Mr. Price engaged in a similar fraud in June 2022. He entered into a contract with MNJ Technologies Direct, Inc., under which MNJ Technologies would supply computer equipment to two of Right PriceIT's customers. PSR ¶ 23. The customers paid Right PriceIT. *Id.* MNJ Technologies provided the equipment, but Mr. Price never paid MNJ Technologies. *Id.*

Finally, the same pattern occurred with a third business. A business called Digitek won a contract to provide electronic equipment to the Ohio Department of Rehabilitation and Correction. PSR ¶ 24. Mr. Price entered into an agreement with Digitek under which Right

7

PriceIT would provide the required equipment to the state agency. *Id.* Mr. Price then entered into another agreement under which ATSG would provide Right PriceIT with the electronic equipment that he would resell to Digitek. *Id.* The state agencies paid Digitek, which in turn paid Right PriceIT. *Id.* ATSG provided the electronic equipment. *Id.* But Mr. Price never paid ATSG the $646,179.70 he owed. *Id.*

Mr. Price then laundered the proceeds of the fraud scheme in order to conceal the funds and keep the businesses from being made whole. PSR ¶ 25. He sent the wires to people who own car dealerships, with the expectation that the funds would be laundered through those businesses. *Id.* To date, Mr. Price has not paid back any of the more than $1.4 million he stole.

*Need for the sentence to afford adequate deterrence and reflect the seriousness of the offense.* The sentence should afford deterrence and reflect the seriousness of the offenses. Mr. Price's actions after his arrest demonstrate that specific deterrence is an important interest here. After Mr. Price's initial detention hearing, Magistrate Judge King ordered him released. His release was stayed, however, until a bed was available in an inpatient substance-abuse treatment program. He completed the program, after which a series of serious violations came to light.

On May 11, 2024, Mr. Price was caught driving a Lamborghini at 129 mph in a 65 mph zone. He has pleaded guilty to a speed violation. On July 12, 2024, Mr. Price again drove recklessly in a luxury car. A redacted version of the police report has previously been filed in this case. (*See* R.30-1.) According to the report, Mr. Price drove a Ferrari F8 Spider at high speeds in a densely populated area. (*Id.*) An officer who witnessed the driving estimated that Mr. Price was traveling at more than 100 mph when he crashed into two vehicles at an intersection. (*Id.*) Mr. Price suffered serious injuries. (*Id.*) The driver of one of the other cars also suffered serious lacerations and had to be removed from his car with the jaws of life. (*Id.*) Testing on the night of

8

the crash showed that Mr. Price had been drinking, in violation of one of his release conditions, though his blood alcohol content was below the legal limit.

Additionally, on the same day as his detention hearing in this case, Mr. Price attempted to obstruct justice. Following the hearing, Mr. Price was detained in Franklin County Jail while he waited to start inpatient treatment. On March 8, 2024, he called his mother at 6:25 p.m. on a recorded jail call. During the call, he told his mother that he wanted her to write something down, and then provided her an Apple ID and password. He told her to "call [Person A] right now," and said, "tell him to get on there, on iCloud, and erase."

The following morning, Mr. Price called Person A. In the call, he asked Person A if he had heard "from my mother last night." Person A said yes. Mr. Price asked, "Did you take care of that?" Person A affirmatively replied, "mhm."

Records from Apple show that Person A had not in fact deleted Mr. Price's iCloud account. That is not to the credit of Mr. Price, however, who wanted Person A to carry out his instructions. These serious violations while on pretrial release show that the sentence must afford specific deterrence to Mr. Price.

More broadly, the Sixth Circuit has recognized that "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (internal quotation marks omitted). This was not a crime that happened in one day. Mr. Price defrauded three businesses spanning multiple years. This form of criminal activity is susceptible to deterrence.

*The history and characteristics of the defendant.* Mr. Price's history and characteristics also call for a guidelines sentence. Before his arrest, Mr. Price had no stable residence. *See* PSR

¶ 74. Since at least 2019, his only employment was with the business where he committed the charged fraud and money laundering. PSR ¶¶ 93–95. He has a gambling problem, which is particularly a concern in cases involving financial crimes. PSR ¶ 82. He has more than one prior conviction, including a federal conviction for Conspiracy to Possess with the Intent to Distribute a Controlled Substance for trafficking methamphetamine and MDMA. PSR ¶¶ 47–59.

Mr. Price's substance abuse history provides additional reason for concern. In his interview with Pretrial Services before his detention hearing, Mr. Price described a lengthy substance abuse history. He started using marijuana and cocaine as a teenager. PSR ¶¶ 86–87. He used ecstasy from age 21 until his arrest. PSR ¶ 87. He was a daily user of methamphetamine from age 24 until his arrest. PSR ¶ 88. A sweat patch applied by Pretrial Services also showed methamphetamine use while on pretrial release. *Id.* Mr. Price has also long abused alcohol. He started drinking at age 16 and has multiple alcohol-related convictions. PSR ¶ 89. This history presents a risk of reoffending given that "[s]ubstance abuse is highly correlated to an increased propensity to commit crime." U.S.S.G. § 5H1.4.

Given the nature and circumstances of Mr. Price's offenses, his history and characteristics, the need for deterrence, and the other facts and circumstances of this case, the recommended sentence would satisfy 18 U.S.C. § 3553(a).

## CONCLUSION

For these reasons, a sentence of 46 months of imprisonment, 3 years of supervised release, and a restitution order in the amount of $1,408,113.51 would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

**Respectfully submitted,**

KENNETH L. PARKER
United States Attorney


s/ Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email: peter.glenn-applegate@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Sentencing Memorandum of the United

States was served this 27th day of January, 2025, electronically upon counsel for the Defendant.

s/Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney